UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------x
CLEAN AIR CAR SERVICE &
PARKING BRANCH THREE, LLC,
CLEAN AIR CAR SERVICE &
PARKING CORP., OPERR
TECHNOLOGIES, INC., OPERR
SERVICE BUREAU, INC., KEVIN S.
WANG,

   **MEMORANDUM AND ORDER**
   Case No. 24-CV-5445 (FB)

  Appellants,

 -against-

OPERR PLAZA, LLC,

  Appellee.
---------------------------------------------------x

*Appearances:*
*For the Appellants:*
KEVIN S. WANG
Wood Wang & Associates, PLLC
30-50 Whitestone Expressway
Suite 402
Flushing, New York 11354

*For the Appellee:*
THOMAS A. DRAGHI
JAY S. HELLMAN
Westerman Ball Ederer Miller Zucker
& Sharfstein, LLP
1201 RXR Plaza
Uniondale, New York 11556

**BLOCK, Senior District Judge:**

  At issue in this bankruptcy appeal is the bankruptcy court's July 19, 2024 order confirming the Chapter 11 reorganization plan for Operr Plaza, LLC ("Operr Plaza"). Appellants also seek review of the bankruptcy court's earlier order denying their motion to dismiss the bankruptcy proceeding in its entirety. Finally,

they seek sanctions pursuant 28 U.S.C. § 1927, Federal Rule of Bankruptcy Procedure 9011, and the Court's inherent authority.

The Court has jurisdiction pursuant to 28 U.S.C. § 158(a)(1). *See United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 269 (2010) ("The Bankruptcy Court's order confirming Espinosa's proposed plan was a final judgment[.]"); Fed. R. Bankr. P. 8003(a)(4) ("The notice of appeal encompasses all orders that, for purposes of appeal, merge into the identified judgment or appealable order or decree."). For the following reasons, both of the bankruptcy court's orders are affirmed and the motions for sanctions are denied.

I

In 2020, Operr Plaza and Clean Air Car Service & Parking Branch Two, LLC ("Clean Air Two") defaulted on a loan secured by a parking garage and office building. The loan was further secured by a pledge of Kevin S. Wang's 100% membership interest in each company. The lender instituted foreclosure proceedings and, in addition, took steps to conduct a UCC sale of Wang's membership interests. A state court declined to enjoin the UCC sale, which took place on June 16, 2021.

Wang then filed a state-court action to declare the sale invalid, while the new owner filed a different state-court action to require Wang to turn over the companies' books and records. The judge in the new owner's action granted

2

summary judgment and entered a permanent injunction requiring Wang to turn over the books and records, and forbidding him from otherwise interfering with the companies' operations. The judge in Wang's action then denied his request for a preliminary injunction on the ground that the issue of the companies' ownership had already been decided in the new owner's action. Wang appealed in both cases.

While the state-court appeals were pending, the companies' new owner filed a voluntary Chapter 11 bankruptcy petition on behalf of each. The bankruptcy court approved joint administration of the bankruptcies.

Operr Plaza's petition listed the office building, valued at $10.5 million, as its principal asset and the secured loan, valued at $22.2 million, as its principal liability. Wang and two companies owned by him—Operr Technologies, Inc., and Operr Service Bureau, Inc. (collectively, "Wang")—each made an unsecured claim against Operr Plaza's estate based on "[g]uaranty liability for loan borrowed by the Debtor from the Lender." Claims Register in 23-41937 (Bankr. E.D.N.Y), Claims 6-2, 7-2, 8-2.[1]

When Clean Air Two and Operr Plaza sought approval to sell the parking garage and office building, Wang moved to dismiss the bankruptcies. He argued

---

[1] The two other Appellants, Clean Air Car Service & Parking Corp. ("Clean Air One") and Clean Air Car Service & Parking Branch Three ("Clean Air Three"), made claims against Clean Air Two's estate, but not Operr Plaza's.

3

that the bankruptcy court lacked jurisdiction because the companies' new owner lacked authority to file the petitions. In addition, he argued that the petitions were filed in bad faith. As an alternative to dismissal, Wang asked the bankruptcy court to lift the automatic stay to allow the state-court appeals to proceed.

The bankruptcy court denied the motion to dismiss, finding "no basis under Section 1112 to dismiss this case." App'x to Appellants' Br. at 1006. With respect to the new owner's authority, the bankruptcy court held that "collateral estoppel prevents this Court from reviewing th[e] state court determination that Wang no longer has any interest in the LLCs or rights under their operating agreements." *Id.* at 1007. Recognizing, however, that Wang had appealed that determination, the bankruptcy court lifted the automatic stay "to let the appeals be determined as requested by the motion." *Id.* at 1008. Wang immediately appealed but Judge Komitee of this Court concluded that the bankruptcy court's order was not final under 28 U.S.C. § 158(a)(1) and denied leave to appeal under 28 U.S.C. § 158(a)(3). *See Clean Air Car Serv. & Parking Branch Three, LLC v. Clean Air Car Serv. & Parking,* 2024 WL 440695, at *3 (E.D.N.Y. Jan. 25, 2024), *appeal dismissed*, 2024 WL 3644948 (2d Cir. June 12, 2024).

The bankruptcies proceeded. On February 8, 2024, the bankruptcy court approved the sale of the parking garage to a third party for $2.5 million. After the sale closed, the Court dismissed Wang's appeal of that order as statutorily moot.

4

*See Clean Air Car Serv. & Parking Branch Three, LLC v. Clean Air Car Serv. & Parking Branch Two, LLC,* 2024 WL 3106171, at *2 (E.D.N.Y. June 24, 2024). Wang appealed to the Second Circuit, which has scheduled oral argument for April 30, 2025.

On April 22, 2024, Operr Plaza submitted its proposed plan of reorganization. In addition to payment in full of administrative expenses, professional fees, and priority claims, the proposed plan called for partial payment of the secured loan, a mechanic's lien, and various unsecured claims, with any cash left over going to Operr Plaza's owner. Wang did not file any objection to the proposed plan, which was unanimously accepted by all voting creditors and Operr Plaza's owner. The bankruptcy court confirmed the plan and set its effective date as July 25, 2025. Wang appealed but did not seek a stay. Accordingly, payments totaling $1.7 million (approximately 85% of Operr Plaza's estate) have been made for administrative, priority and secured claims, leaving a balance of $300,000 for distribution to other claimants and the winding down of the estate.[2]

---

[2]Clean Air Two's bankruptcy followed a similar trajectory. Wang's appeal of Clean Air Two's confirmation order was assigned to Judge Merchant, who dismissed the appeal under the doctrine of equitable mootness. *Clean Air Car Serv. & Parking Branch Three, LLC v. Clean Air Serv. & Parking Branch Two, LLC*, 2024 WL 4118982, at *3 (E.D.N.Y. Sept. 9, 2024), *reconsideration denied*, 2025 WL 1002191 (E.D.N.Y. Apr. 3, 2025). Wang has predictably appealed her order to the Second Circuit.

## II

Although Wang has technically appealed the bankruptcy court's confirmation order, his arguments focus almost exclusively on the denial of his motion to dismiss. In that regard, he argues that (A) "[t]he Bankruptcy Case Should Be Dismissed When the Bankruptcy Petition Was Filed Without Authorization, and (B) "[t]he Bankruptcy Petitions Should Be Dismissed for Cause By Filing frivolously and filing in Bad Faith." Appellants' Br. at 24, 41.[3] Operr Plaza does not squarely address either argument, instead arguing that the confirmation order was correct on the merits and that Wang's appeal is now equitably moot. *See In re Charter Commc'ns, Inc.*, 691 F.3d 476, 482 (2d Cir. 2012) ("In this circuit, an appeal is presumed equitably moot where the debtor's plan of reorganization has been substantially consummated."). With respect to the bankruptcy court's order denying Wang's motion to dismiss, Operr Plaza either dismisses Wang's arguments as "irrelevant," Appellee's Br. at 37, or does not address them at all.

---

[3]Wang briefly argues that that bankruptcy court abused its discretion in confirming the plan. That section of his brief, however, simply repeats his arguments that Operr Plaza's bankruptcy petition was filed in bad faith and without authority. His only other argument—that the representative who voted in favor of the plan on Operr Plaza's behalf was not properly appointed—is likewise a challenge to the new owner's authority.

The Court appreciates that Wang's arguments are prolix, repetitive, and something of a moving target.  They must nevertheless be addressed.

**A.  Authorization to File the Bankruptcy Petition**

"The District Court in passing on [bankruptcy] petitions filed by corporations . . . must of course determine whether they are filed by those who have authority so to act. In absence of federal incorporation, that authority finds its source in local law. If the District Court finds that those who purport to act on behalf of the corporation have not been granted authority by local law to institute the proceedings, it has no alternative but to dismiss the petition." *Price v. Gurney*, 324 U.S. 100, 105–06 (1945).  Wang describes *Price* as addressing an issue of subject-matter jurisdiction, as some out-of-circuit cases do.  *See Hager v. Gibson*, 108 F.3d 35, 39 (4th Cir. 1997); *In re Delta Starr Broad., L.L.C.*, 422 F. App'x 362, 368 (5th Cir. 2011).  Although courts in this circuit have refrained from applying that label, they nevertheless agree that *Price* stands for the proposition that a bankruptcy court cannot, as a matter of law, entertain a petition unless it is filed by someone with authority to act on the debtor's behalf.  *See, e.g., In re Richardson Foods, Inc.*, 659 B.R. 154, 169 (Bankr. S.D.N.Y. 2024).[4]

---

[4]Accordingly, the Court declines to consider Operr Plaza's argument that this appeal—like Wang's appeal of the order confirming Clean Air Two's plan—should be dismissed as equitably moot.  Equitable mootness is a prudential doctrine, not a jurisdictional one, *see In re Charter Commc'ns, Inc.*, 691 F.3d at

7

As *Price* instructs, who has authority to act on behalf of Operr Plaza is a question of New York law. It is, moreover, a question that has already been answered by the New York courts. The court in Operr Plaza's new owner's state-court action held that the new owner "acquired [Wang's] 100% membership interest in the LLCs," App'x to Appellants' Br. at 870, and tersely rejected Wang's argument that the membership interest did not include managerial rights. *See id.* ("Not so.") Its final summary judgment requiring Wang to surrender Operr Plaza's books and records, and permanently enjoining him from interfering in its operations, reiterated that Wang "no longer owns the LLCs." *Id.* at 873. After the bankruptcy court lifted the automatic stay, the First Department affirmed the permanent injunction, describing Wang as "the former sole member and manager" of Operr Plaza, and the new owner as its "current sole managing member." *Operr Plaza, LLC v. Wang*, 208 N.Y.S.3d 196, 196 (1st Dep't 2024). The Court of Appeals denied leave to appeal. *See Operr Plaza, LLC. v. Wang*, 42 N.Y.3d 999 (2024).

The bankruptcy court correctly held that it was bound by the state courts' adjudication of Operr Plaza's ownership. A federal court must give a state-court judgment the same preclusive effect it would have in the courts of that state. *See*

---

481, and surely cannot override *Price*'s limitation on bankruptcy courts' authority.

8

*LaFleur v. Whitman*, 300 F.3d 256, 271 (2d Cir. 2002). "Under New York law, collateral estoppel 'precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party . . . whether or not the tribunals or causes of action are the same.'" *Id.* (quoting *Ryan v. New York Tel. Co.,* 62 N.Y.2d 494, 500 (1984)). The issue must be "identical to an issue which was raised, necessarily decided and material in the first action," and the party to be bound by it must have had "a full and fair opportunity to litigate the issue in the earlier action." *Id.* (quoting *Parker v. Blauvelt Volunteer Fire Co.,* 93 N.Y.2d 343, 349 (1999)).

The issue of Operr Plaza's ownership was raised and decided in the state-court action. Wang had a full and fair opportunity to litigate it. It was clearly material and necessary to the state court's judgment. *See Operr Plaza*, 208 N.Y.S.3d at 196 ("Plaintiffs are entitled to summary judgment on their claim for conversion [of Operr Plaza's records] because [the new owner], as the entities' current sole managing member, is the rightful possessor of the records[.]"). Therefore, collateral estoppel bars Wang from relitigating whether the new owner acquired full managerial rights in Operr Plaza.

Wang responds by reframing his argument as a challenge to the validity of the UCC sale, claiming that it was commercially unreasonable, *see* N.Y. U.C.C. § 9-610(b), and that the buyer did not act in good faith, *see id*. § 9-617(c)(1). Even

9

if the validity of the UCC sale was not challenged in the state-court action, it certainly could have been. "According to New York law, under 'res judicata, or claim preclusion, a valid final judgment bars future actions between the same parties on the same cause of action.'" *Yeiser v. GMAC Mortg. Corp.*, 535 F. Supp. 2d 413, 421 (S.D.N.Y. 2008) (quoting *Parker*, 93 N.Y.2d at 347). The doctrine applies with equal force to defenses that could have been raised in the prior action, *see id.*, yet Operr Plaza does not rely on it.

In any event, New York law easily disposes of Wang's challenge on the merits. Once a UCC sale is consummated, "a debtor may seek money damages" but it may not "unwind the sale, even if a court were to find that [the buyer] was a bad-faith transferee." *Atlas MF Mezzanine Borrower, LLC v. Macquerie Texas Loan Holder, LLC*, 105 N.Y.S.3d 59, 68 (1st Dep't 2019). The same is true of a commercially unreasonable sale. *See id.* at 70.

Wang notes that the UCC's Permanent Editorial Board ("PEB") "disagrees" with the First Department's holding in *Atlas* and has clarified that "the debtor is also entitled to the debtor's right of redemption and other rights in the collateral when the transferee has not acted in good faith." Permanent Editorial Board for the Uniform Commercial Code, Commentary No. 22 (Aug. 24, 2020), *available at* https://www.ali.org/sites/default/files/2024-09/PEB-Aug-2020.pdf. While the PEB's views no doubt carry considerable weight as how the UCC should be

10

interpreted, neither the New York Legislature nor the New York courts have retreated from *Atlas* in response. *See, e.g., Walsh v. Ocwen Loan Serv., LLC*, 192 N.Y.S.3d 128, 130 (2d Dep't 2023) (citing *Atlas* for the proposition that vacating a sale of shares is not "available under article 9 of the UCC").

In sum, New York courts applying New York law have concluded that Operr Plaza's new owner has full managerial rights in the company. A determination that the UCC sale was flawed in some way would not unwind the sale. The bankruptcy court correctly held that the new owner had the authority to file a bankruptcy petition on Operr Plaza's behalf and, accordingly, correctly denied Wang's motion to dismiss on that ground.

**B.    "Cause" to Dismiss the Bankruptcy Petition**

11 U.S.C. § 1112(b)(1) provides that a bankruptcy court "shall" dismiss a Chapter 11 proceeding (or convert it to a liquidation proceeding under Chapter 7) "for cause." Although the statute mandates dismissal or conversion upon a finding of cause, it "grants the bankruptcy court broad equitable discretion to grant relief based on the particular facts and circumstances of the case." *Lynch v. Barnard*, 590 B.R. 30, 36 (E.D.N.Y. 2018).

"Courts in this circuit and elsewhere have . . . concluded that . . . a bankruptcy court may dismiss or convert a case upon a finding of bad faith." *In re JJ Arch LLC*, 663 B.R. 258, 280-81 (Bankr. S.D.N.Y. 2024 (citing *In re C-TC 9th*

11

*Ave. P'ship*, 113 F.3d 1304, 1310 (2d Cir. 1997)). Bad faith in this context "involves finding an intent to abuse the judicial process, and the purpose of the reorganization process." *Clear Blue Water, LLC v. Oyster Bay Mgmt. Co.*, 476 B.R. 60, 68 (E.D.N.Y. 2012). Whether a debtor has filed a Chapter 11 proceeding in bad faith is a finding of fact reviewed only for clear error. *See In re C-TC 9th Ave. P'ship*, 113 F.3d at 1312 n.6 ("We review the bankruptcy court's factual conclusions of bad faith under the clearly erroneous standard.").

In support of his argument that Operr Plaza filed in bad faith, Wang relies heavily on the factors considered by the Second Circuit in *In re C-TC 9th Avenue Partnership* as "indicative of a bad faith filing":

(1)  the debtor has only one asset;

(2)  the debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors;

(3)  the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt;

(4)  the debtor's financial condition is, in essence, a two party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action;

(5)  the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights;

(6)  the debtor has little or no cash flow;

12

    (7)    the debtor can't meet current expenses including the payment of personal property and real estate taxes; and

    (8)    the debtor has no employees.

113 F.3d at 1311 (citing *Pleasant Pointe Apartments, Ltd. v. Kentucky Hous. Corp.*, 139 B.R. 828, 829 (W.D. Ky. 1992)).  Those factors are of limited relevance here because both *In re C-TC 9th Avenue Partnership* and *Pleasant Pointe Apartments* involved a claim that the debtor was acting in bad faith to stall state-court foreclosure proceedings by a secured creditor.  Thus, the effect of dismissing the bankruptcy was to return a straightforward dispute between the debtor and a single creditor to state court.

    Wang is not a secured creditor.  Operr Plaza's secured creditors—indeed, everyone with a claim against the estate except Wang—have willingly participated in the bankruptcy without questioning Operr Plaza's *bona fides*.

    It is true that Operr Plaza's financial condition made successful reorganization unlikely.  "[W]hile a debtor may conclude Chapter 11 proceedings by liquidating and may even enter them with an intent to liquidate if necessary, there is no reason a debtor should be permitted to enter these proceedings without a possibility of reorganization." *In re C-TC 9th Ave. P'ship*, 113 F.3d at 1309.

    Operr Plaza entered bankruptcy with a $10.5 million office building.  Just two months later, it sought the bankruptcy court's approval to sell that asset.  As

the Court observed in connection with Clean Air Two's similar asset sale, "[o]ne might reasonably dispute whether the sale of the sole revenue-generating asset of a business that is—in theory, at least—attempting to reorganize, rather than liquidate, is 'good business.' On the other hand, the fact that the asset is burdened with more than $22 million in debt may make reorganization all but impossible." *Clean Air Car Serv. & Parking Branch Three, LLC v. Clean Air Car Serv. & Parking Branch Two, LLC*, 2024 WL 1144635, at *4 (E.D.N.Y. Mar. 13, 2024).

But bad business is not necessarily bad faith. Operr Plaza's revenue stream (or lack thereof) is certainly a relevant factor, *see In re JJ Arch LLC*, 663 B.R. at 275 (considering "the fact that the Debtor is not actively generating revenue"), but the ultimate inquiry is whether it had "an intent to abuse the judicial process, and the purpose of the reorganization process." *Clear Blue Water,* 476 B.R. at 68. Reorganization is meant "to assist financially distressed business enterprises by providing them with breathing space in which to return to a viable state," *In re C-TC 9th Ave. P'ship*, 113 F.3d at 1310 (2d Cir. 1997), but it may also "include an orderly or complete liquidation." *In re AdBrite Corp.*, 290 B.R. 209, 216 (Bankr. S.D.N.Y. 2003). Whether or not Operr Plaza had any hope of returning to a viable state, bankruptcy clearly afforded it breathing space for an orderly liquidation. At most, Wang has shown that the bankruptcy should have been converted to a Chapter 7 proceeding. He did not seek that remedy, however, and there is no

reason to think that such a proceeding would have been any more favorable to his claimed interest in the company.

Nor is there any evidence that Operr Plaza intended to abuse the judicial process to the detriment of that interest.  On the contrary, it agreed to lift the automatic stay to allow Wang to pursue his state-court appeals, a factor that the bankruptcy court explicitly considered.  *See* App'x to Appellants' Br. at 1000  ("As further evidence the debtors did not file the petitions to avoid the state court litigation, the debtors do not object to the Court lifting [the] stay on a limited basis to permit the movants to continue prosecuting the appeals that are the subject of the movants' lift stay motions.").

In sum, the bankruptcy court carefully laid out the facts and circumstances surrounding Operr Plaza's Chapter 11 filing.  The Court finds no error—let alone clear error—in its analysis of those factors or its conclusion that Operr Plaza did not act in bad faith.

### III

Wang moves for sanctions pursuant to 28 U.S.C. § 1927 and the Court's inherent authority.  He has also filed a second motion for sanctions pursuant to Federal Rule of Bankruptcy Procedure 9011.  Both motions are based on the arguments raised by Operr Plaza in this appeal.

15

The Court has authority to sanction conduct under § 1927 and its inherent authority if the conduct was "without a colorable basis" and "motivated by improper purposes such as harassment or delay." *Schlaifer Nance & Co. v. Est. of Warhol*, 194 F.3d 323, 336 (2d Cir. 1999); *see also id.* (noting that "the only meaningful difference between an award made under § 1927 and one made pursuant to the court's inherent power is that awards under § 1927 are made only against attorneys or other persons authorized to practice before the courts while an award made under the court's inherent power may be made against an attorney, a party, or both." (internal quotations and alterations omitted)). Under Rule 9011—the bankruptcy equivalent of Federal Rule of Civil Procedure 11—"[s]anctions may be—but need not be—imposed when court filings are used for an 'improper purpose,' or when claims are not supported by existing law, lack evidentiary support, or are otherwise frivolous." *In re Parikh*, 508 B.R. 572, 585 (Bankr. E.D.N.Y. 2014) (citing *Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 63 (2d Cir. 2012)).

Wang's lengthy list of grievances boils down to an improper attempt to reargue his claim that Operr Plaza's new owner lacked the authority to file a Chapter 11 petition on its behalf. The Court rejected that claim. Although this memorandum and order does not address every point of Wang's lengthy and convoluted argument, the Court carefully considered each one. It suffices to say

16

that Wang's argument that Operr Plaza's new owner lacked full managerial rights is barred by collateral estoppel. His argument that he is entitled to unwind the UCC sale by which it acquired those rights fails as a matter of New York law. Nothing Operr Plaza said or failed to say in addressing those arguments remotely approaches sanctionable conduct.

Nor is there any evidence that Operr Plaza acted with an improper purpose. On the contrary, the Court finds that its sole objective throughout this appeal has been to defend the legitimate rights of its new owner against the ceaseless challenges of its former owner, who has proven himself unwilling to accept the loss of his rights in the company

## IV

For the foregoing reasons, the bankruptcy court's order denying Wang's motion to dismiss and its order confirming Operr Plaza's reorganization plan are affirmed. Wang's motions for sanctions are denied.

**SO ORDERED.**

  /S/ Frederic Block_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
April 23, 2025

17